**No. 23-3475**

# In the
# United States Court of Appeals
## for the Sixth Circuit

JACQUELYN MARES, M.D.,

*Plaintiff-Appellant,*

v.

MIAMI VALLEY HOSPITAL; PREMIER HEALTH PARTNERS; WRIGHT STATE UNIVERSITY, dba Boonshoft School Of Medicine; JEROME L. YAKLIC, MD; G. THEODORE TALBOT, MD; ALBERT F. PAINTER, Psy.D.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Ohio at Dayton, No. 3:20-cv-00453.
The Honorable **Michael J. Newman**, Judge Presiding.

**BRIEF OF DEFENDANTS-APPELLEES
MIAMI VALLEY HOSPITAL and
PREMIER HEALTH PARTNERS**

KAREN T. DUNLEVEY
JACKSON LEWIS PC
PNC Center
201 East Fifth Street
26th Floor
Cincinnati, Ohio 45202
(513) 898-0050

*Counsel for Defendants-Appellees*



UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 23-3475 _____    Case Name: Jacquelyn Mares v. Miami Valley Hospital, et al.

Name of counsel: Karen T. Dunlevey _____

Pursuant to 6th Cir. R. 26.1, Miami Valley Hospital _____
*Name of Party*
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

> No

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
    in the outcome?  If yes, list the identity of such corporation and the nature of the financial
    interest:

> No

CERTIFICATE OF SERVICE

I certify that on _____ 6/1/2023 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Karen T. Dunlevey _____
_____
_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 23-3475         Case Name: Jacquelyn Mares v. Miami Valley Hospital, et al.

Name of counsel: Karen T. Dunlevey

Pursuant to 6th Cir. R. 26.1, Premier Health Partners
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No

---

CERTIFICATE OF SERVICE

I certify that on _____ 6/1/2023 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Karen T. Dunlevey

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# Table of Contents

Disclosure of Corporate Affiliations and Financial Interest ........................................i

Table of Authorities...................................................................................................iv

Statement Regarding Oral Argument........................................................................vi

Statement of the Issues...............................................................................................1

Statement of the Case.................................................................................................2

I.      Background .....................................................................................................2

II.     Dr. Mares' Termination from the Residency Program ...................................4

Summary of Argument................................................................................................6

Argument....................................................................................................................7

I.      The District Court Properly Granted Summary Judgment to MVH
        and PHP On Dr. Mares' Procedural Due Process Claim ................................7

II.     The District Court Properly Granted Summary Judgment to MVH
        and PHP on Dr. Mares' Substantive Due Process Claim................................9

III.    The District Court Properly Granted Summary Judgment to MVH
        and PHP on Dr. Mares' Breach of Contract Claim......................................10

        A.      There Was No Breach of the Resident Agreement............................10

        B.      There are No Genuine Disputes Regarding Implied Good
                Faith. ................................................................................................12

Conclusion ...............................................................................................................13

# Table of Authorities

*Bodnovich v. ABF Freight Sys.*,
　7th Dist. Belmont No. 93-B-36, 1994 Ohio App. LEXIS 5598
　(Dec. 13, 1994) ................................................................................. 12

*Bowers v. City of Flint*,
　325 F.3d 758 (6th Cir. 2003) ........................................................... 10

*Branham v. Thomas M. Cooley Law Sch.*,
　689 F.3d 558 (6th Cir. 2012) ............................................................. 8

*Braun v. Ann Arbor Charter Twp.*,
　519 F.3d 564 (6th Cir. 2008) ............................................................. 9

*Davis v. Mann*,
　882 F.2d 967 (5th Cir. 1989) ............................................................. 8

*Doe v. Miami Univ.*,
　882 F.3d 579 (6th Cir. 2018) ............................................................. 8

*Edelman v. Franklin Iron & Metal Corp.*,
　87 Ohio App.3d 406, 622 N.E.2d 411 (1993) ................................... 12

*Endres v. Ne. Ohio Med. Univ.*,
　938 F.3d 281 (6th Cir. 2019) ............................................................. 8

*Graves v. Starbucks Coffee Company/Starbucks Corp.*,
　No. 1:15-cv-431, 2016 U.S. Dist. LEXIS 111484
　(S.D. Ohio Aug. 22, 2016) ............................................................... 13

*Mitchell v. Fujitec Am., Inc.*,
　518 F. Supp. 3d 1073 (S.D. Ohio 2021) .......................................... 13

*Nigro v. Va. Commonwealth Univ. Med. College of Va.*,
　No. 5:09-CV-00064, 2010 U.S. Dist. LEXIS 56229
　(W.D. Va. June 4, 2010) ..................................................................... 8

*Patrick v. CitiMortgage Inc.*,
　676 F. App'x 573 (6th Cir. 2017) ..................................................... 12

*Pearson v. City of Grand Blanc*,
　961 F.2d 1211 (6th Cir. 1992) ......................................................... 10

*Pyle v. Ledex*,
　49 Ohio App.3d 139, 551 N.E.2d 205 (1988) ................................. 12

*Rogers v. Tenn Bd. of Regents*,
  273 F. App'x 458 (6th Cir. 2008)..............................................................7

*Schutte v. United Dairy Farmers, Inc.*,
  No. C-1-97-850, 1998 U.S. Dist. LEXIS 22449
  (S.D. Ohio March 12, 1998) ................................................................13

*State ex rel. Ferreri*,
  70 Ohio St.3d 587, 639 N.E.3d 1189 (1994) .......................................8

*United States v. Johnson*,
  440 F.3d 832 (6th Cir. 2006)...............................................................10

*Wendy's Int'l, Inc. v. Saverin*,
  337 F. App'x 471 (6th Cir. 2009)........................................................12

**Statement Regarding Oral Argument**

Defendants-Appellees Miami Valley Hospital and Premier Health Partners respectfully state that they do not believe oral arguments are necessary in this case because the briefing sufficiently presents the appropriate issues to the Court for evaluation. However, if the Court determines that oral arguments would be beneficial, Defendants-Appellees Miami Valley Hospital and Premier Health Partners do not object to those oral arguments.

**Statement of Issues**

Did the District Court properly award summary judgment on Dr. Mares' due process and breach of contract claims where she: (1) presented the District Court with no evidence that she was denied either procedural or substantive due process in her removal from the Boonshoft School of Medicine's residency program and subsequent termination from Miami Valley Hospital; and (2) cannot show that Miami Valley Hospital or Premier Health Partners breached any contract to which Dr. Mares was a party?

## Statement of the Case

### I.   <u>Background</u>

In June 2016, Dr. Mares enrolled in the Wright State University Obstetrics and Gynecology Residency Program (the "Program") through the Wright State University Boonshoft School of Medicine ("BSOM"). (Compl. ¶ 15, Doc. 1 at PageID# 4-5) Through the Program, Dr. Mares was assigned to work at Miami Valley Hospital ("MVH" or "Hospital"), which is owned and operated by Premier Health Partners ("PHP"). (Affidavit of Teresa Zryd, M.D., Doc. 25-1 at PageID ## 172-173; Deposition of Teresa Zryd, M.D., Doc. 61 at PageID# 2484-85)

Dr. Mares entered into a Resident-Fellow Agreement ("Resident Agreement") with MVH and BSOM on July 1, 2016. (Ex. A to Compl., Doc. 1-1 at PageID # 12-15) The Resident Agreement clearly states that Dr. Mares' employment at MVH was "at will." (*Id*. at Section I, PageID# 12). It also provides that: "[t]his contract may be terminated by the Hospital immediately, at any time prior to its expiration, for the following reason: …If in the Program's opinion the resident/fellow substantially fails to meet any of the general requirements of the Program or is terminated by the Program." (*Id*. at Section IV(F), PageID# 14) Logically, Dr. Mares could no longer be employed as a Resident if she is no longer participating in the Residency Program. Moreover, "Academic Progress and completion of residency is the sole discretion of

2

the residency program director and relevant academic department clinical competency committee." (*Id*. at Section V, PageID# 14)

Termination from the Program is governed by Item 504 – Academic and Professional Standards / Due Process of the BSOM Resident Manual ("Item 504"). (*See Id*.; Ex. C to Compl., Doc. 1-3 at PageID# 19-21) Item 504 includes professional standards and basic competencies a resident must meet including: "cognitive medical knowledge;" performance of all responsibilities "competently, efficiently, and maturely;" and refraining from "obstructing or disrupting medical care and hospital activities." (*Id*. at "Academic Standards" and "Professional Standards," PageID# 19) Under Item 504, if a resident fails to satisfy the Program's academic and professional standards, "the program may act to demote, not promote, not renew, or terminate the resident's appointment." (*Id*. at "Adverse Actions," PageID# 19)

Item 504 contains a due process provision that allows a resident subject to dismissal from the Program to request a review of the action by a three-member hearing panel. (*Id*. at "Due Process" ¶ 3, PageID# 20) After a hearing, the panel is required to make a recommendation to the Dean of BSOM and the Hospital's chief executive officer or designee who then jointly decide to: (1) affirm the Program's intended action, (2) take revised action against the resident, or (3) not affirm the Program's intended action. (*Id*. at "Due Process" ¶ 5, PageID# 20) The resident may

then appeal this decision to the Provost of WSU who shall then decide to either affirm or not affirm the decision. (*Id.* at "Due Process" ¶ 7, PageID# 21)

## II.   <u>Dr. Mares' Termination from the Residency Program</u>

Based on her undisputed lack of professionalism and competency,[1] BSOM dismissed Dr. Mares from the Program in October 2018 after the Clinical Competency Committee of the OBGYN Department voted six to two in favor of dismissal. (Zryd Aff. at ¶ 9, Ex. B, Doc. 25-1, PageID# 185) Dr. Mares does not dispute the Clinical Competency Committee's findings that her performance and professionalism were deficient. (Mares Dep., Ex. YY, Doc. No. 52-64 at PageID# 1596, 1617) (Dr. Mares acknowledged that she had "never denied that [the events] happened" and "was completely atrocious to medical students in second year.") Pursuant to Item 504, Dr. Mares requested a review from the three-member hearing panel. (Mares Dep., Doc. 52 at PageID# 1081) At the hearing, Dr. Mares was given the opportunity to present her case and evidence. She admits she was not restricted in any way from presenting her case. (*Id.* at PageID# 1079) Notably, Dr. Mares did not challenge the veracity of the events that resulted in her dismissal. (*Id.* at PageID#

---

[1] To avoid unnecessary duplication, MVH and PHP incorporate the Statement of Case presented by Defendants-Appellees Wright State University, Albert F. Painter, Theodore Talbot, and Jerome L. Yaklic (collectively "WSU Defendants"), which details the numerous professional deficiencies Dr. Mares exhibited and opportunities she was given to correct her behavior. (*See* Brief of Appellees Wright State University, et al., Doc. 22 at pp. 5-28)

1145) ("[I]t's a long time coming and a lot of this bad stuff they are pinning on me is actually true. I am no saint.")

On review, the three-person hearing panel recommended that Dr. Mares be permitted to remain in the Program, subject to certain conditions. (Zryd Aff. at ¶ 11, Doc. 25-1 at PageID# 174) Dr. Dunn, Dean of BSOM, and Dr. Zryd, the Vice President of Academic Affairs and Research at MVH, reviewed the panel's decision but ultimately agreed with the Clinical Competency Committee's recommendation that Dr. Mares be dismissed due to her repeated instances of unprofessionalism and insubordinate conduct. (*Id.* at ¶ 13, PageID# 174-175) Dr. Mares appealed and Dr. Susan Edwards, Provost of WSU, made the final decision that Dr. Mares would be dismissed from the Program. (*Id.* at ¶ 6, Ex. D, PageID# 191)

Following her dismissal, Dr. Mares' employment with MVH was also terminated pursuant to the Resident Agreement. PHP is not a party to any agreements with Dr. Mares and was not her employer.

Dr. Mares filed a lawsuit stemming from her dismissal in the Montgomery County, Ohio Court of Common Pleas. (*Mares v. Miami Valley Hospital, et al.*, No. 2019 CV 02921 (Montgomery Co. June 21, 2019) Dr. Mares voluntarily dismissed that case with dispositive motions pending. Dr. Mares refiled in federal court. (*See* Complaint, Doc. 1). The District Court appropriately granted summary judgment in favor of Defendants-Appellees on all of Dr. Mares' claims on May 2, 2023. (*See*

Order Granting Defendants' Motion for Summary Judgment, Doc. 69) This appeal followed. The Sixth Circuit should uphold the District Court's grant of summary judgment and dismiss the appeal.

## Summary of Argument

The District Court properly granted summary judgment to Appellees because Dr. Mares failed to establish her due process or breach of contract claims. With respect to Dr. Mares' due process and substantive due process claims, both were properly dismissed as to MVH and PHP because she received ample due process. Even if she had not, these doctrines are inapplicable to private employers like MVH and PHP. Furthermore, Dr. Mares cannot show a violation of due process because no constitutional rights are at issue – Dr. Mares has no protected right to continue her employment with a private employer or complete her residency program.

The District Court also properly found that there was no breach of the Resident Agreement. Dr. Mares is unable to point to any breached duty owed by MVH and it is undisputed that MVH had every right to terminate Dr. Mares' employment under the Resident Agreement after she was dismissed from the Program. Finally, Dr. Mares' attempt to apply an implied duty of good faith is misguided. This doctrine does not apply to employment contracts and Dr. Mares furthermore was an at-will employee. Summary judgment must be upheld.

**Argument**

**I.    The District Court Properly Granted Summary Judgment to MVH and PHP On Dr. Mares' Procedural Due Process Claim**

MVH and PHP, to avoid unnecessary duplication, incorporate by reference the arguments on procedural due process in the WSU Defendants' Brief. (*See* Brief of Appellees Wright State University, et al., Doc. 22 at pp. 34-55) Additionally, Dr. Mares' Brief fails to develop any independent argument as to MVH or PHP. Instead, her Brief focuses on solely on the WSU Defendants and does not address any actions taken by MVH or PHP. Notably, MVH and PHP were not authorized to and did not make the final decision to remove Dr. Mares from the Program – WSU Provost Edwards did. (Zryd Aff. at ¶ 6, Ex. D, Doc. 25-1, at PageID# 191) Therefore, Dr. Mares' due process argument (which solely stems from her dismissal from the Program) cannot extend to MVH and PHP which did not make the final decision on her dismissal.

Additionally, dismissal of this claim as to MVH and PHP is proper because both are private employers. (Amd. Compl. at ¶¶ 10-11, Doc. 39 at PageID# 578) Procedural due process claims involve whether a *state actor* has interfered with a protected interest in liberty or property. *See Rogers v. Tenn Bd. of Regents*, 273 Fed. Appx. 458, 462 (6th Cir. 2008) (finding that to state a viable procedural due process claim, plaintiff must establish that a clearly established constitutional liberty or property interest was deprived under color of state law without appropriate process).

*See also State ex rel. Ferreri*, 70 Ohio St.3d 587, 591, 639 N.E.3d 1189 (1994) (Generally, "protections for individual rights and liberties contained in the United States and Ohio Constitutions apply only to actions of governmental entities").

Furthermore, Dr. Mares did not have a constitutionally protected right to continue her employment with MVH, a private employer, or complete her residency program. *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 565 (6th Cir. 2012) ("Any right to continued employment enjoyed by an employee of a private employer arises out of the employment contract. Such contractual rights do not rise to the level of a protected property interest."); *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 297-98 (6th Cir. 2019) (the law defining the due process rights of a medical student being dismissed from a medical education program is not clearly established); *Doe v. Miami Univ.*, 882 F.3d 579, 598 (6th Cir. 2018) (the Supreme Court has never held that the interest in continued education at a public university constitutes a fundamental property or liberty interest that finds refuge in the substantive protection of the Due Process Clause); *see also Nigro v. Va. Commonwealth Univ. Med. College of Va.*, No. 5:09-CV-00064, 2010 U.S. Dist. LEXIS 56229, at **24-25 (W.D. Va. June 4, 2010) (finding no clearly established right to complete a 3-year residency program); *Davis v. Mann*, 882 F.2d 967, 974 (5th Cir. 1989) ("It is well-known that the primary purpose of a residency program

is not employment or a stipend, but the academic training and the academic certification for successful completion of the program.").

Even if Dr. Mares could establish a constitutionally protected right – which she cannot – there is no genuine dispute of fact that she received due process as described in detail in the WSU Defendants' Brief. Here, the District Court properly granted summary judgment on Dr. Mares' procedural due process claim.

## II. The District Court Properly Granted Summary Judgment to MVH and PHP on Dr. Mares' Substantive Due Process Claim

Like in Section I, *supra*, MVH and PHP also incorporate by reference the arguments on substantive due process in the WSU Defendants' Brief. (*See* Brief of Appellees Wright State University, et al., Doc. 22 at pp. 55-58) Moreover, Dr. Mares' substantive due process argument does not even mention MVH or PHP – this highlights that she has no independent basis to assert this claim against MVH or PHP.

Dr. Mares' substantive due process claim was also properly dismissed as to MVH and PHP because she cannot establish the existence of a constitutionally protected right to continue in the residency program or employment with MVH (*see* Section I, *supra*), which is an essential element of her substantive due process claim. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) ("To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and

(2) the constitutionally protected interest has been deprived through arbitrary and capricious action."). Furthermore, MVH and PHP are not state actors so Dr. Mares cannot – nor does she attempt to – establish that they were acting under the color of state law. *See Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992)) (a claim for substantive due process rests on "the right to be free of 'arbitrary and capricious' action by *government actors*.") (*emphasis added*). The District Court properly granted summary judgment on this claim.

## III.    The District Court Properly Granted Summary Judgment to MVH and PHP on Dr. Mares' Breach of Contract Claim

### A.    There Was No Breach of the Resident Agreement.[2]

It is undisputed that MVH complied with the terms of the Resident Agreement.[3] Dr. Mares' entire argument centers on the incorrect premise that MVH breached the contract because Dr. Mares was not given due process under Item 504. As discussed in Section I, *supra*, due process (and then some) was given. Dr. Mares incorrectly argues that because the panel's recommendation to reinstate her was

---

[2] Dr. Mares' Brief does not discuss her claim for breach of the BSOM Medical Education Agreement so it has been abandoned and will not be addressed in MVH and PHP's Brief. *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.").

[3] PHP was not a party to any agreements with Dr. Mares, so she therefore cannot bring a breach of contract claim against PHP.

rejected means due process was not followed. This is inaccurate. The process was followed; however, ultimately, the panel's recommendation was unworkable and the original dismissal determination was adopted.

Dr. Mares cites no other independent basis for how the Resident Agreement was breached. Nor can there be. Dr. Mares' employment was "at will" and it is undisputed that "completion of Residency is the ***sole discretion*** of the residency program director and relevant academic department competency committee." (Ex. A to Compl., Doc. 1-1 at PageID# 12, 14) Further, the Resident Agreement clearly states the contract may be terminated "[if] in the Program's opinion the resident/fellow substantially fails to meet any of the general requirements of the Program or is terminated by the Program." (*Id*.) As the District Court correctly noted: "[t]here is no ambiguity as to the meaning of this provision, so MVH and Premier Health did not breach the contract" by terminating Dr. Mares' employment once she was terminated from the Program. (Order, Doc. 69 at PageID# 2838) Indeed, both optional grounds for termination were met here – (1) the Program determined that she failed to substantially meet the requirements of the Program and (2) she was terminated by the Program.

Dr. Mares cites no case law or even arguments addressing this clear and unambiguous language under the Resident Agreement giving MVH an absolute right to terminate her employment after she was terminated from the Program. There is

11

no genuine question of fact that MVH had a right to terminate Dr. Mares and she identifies no facts to suggest MVH breached the contract. Summary judgment was properly entered by the District Court.

### B. There are No Genuine Disputes Regarding Implied Good Faith.

This Court does not need to evaluate whether implied good faith was breached because there was no breach of contract. *See Patrick v. CitiMortgage Inc.*, 676 F. App'x 573, 577 (6th Cir. 2017) ("Ohio law recognizes only a breach of contract claim; it does not recognize a free-standing or independent claim for breach of the covenants of good faith and fair dealing."); *Wendy's Int'l, Inc. v. Saverin*, 337 F. App'x 471, 477 (6th Cir. 2009) ("the implied duty of good faith cannot be breached by acting as allowed by the specific terms of the contract").

Even assuming, *arguendo*, that Dr. Mares could create a genuine issue of material fact regarding breach of the Resident Agreement, the doctrine of good faith and fair dealing is inapplicable. Ohio courts have routinely found that the doctrine of good faith and fair dealing does not apply to employment contracts. *See Edelman v. Franklin Iron & Metal Corp.*, 87 Ohio App.3d 406, 410, 622 N.E.2d 411 (1993) (citing *Pyle v. Ledex*, 49 Ohio App.3d 139, 551 N.E.2d 205 (1988)) ("Ohio law does not recognize the doctrine of good faith and fair dealing in employment contracts."); *Bodnovich v. ABF Freight Sys.*, 7th Dist. Belmont No. 93-B-36, 1994 Ohio App. LEXIS 5598, at *5 (Dec. 13, 1994) ("Ohio and Federal cases applying Ohio law, do

not recognize claims for breach of covenant of good faith and fair dealing by at-will employees"); *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1099 (S.D. Ohio 2021) ("Ohio does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in the case of a wrongful discharge of an at-will employee."); *Graves v. Starbucks Coffee Company/Starbucks Corp.*, No. 1:15-cv-431, 2016 U.S. Dist. LEXIS 111484, at *41 (S.D. Ohio Aug. 22, 2016) ("Ohio does not recognize a cause of action of breach of good faith and fair dealing when it involves the discharge of an at-will employee, or more generally, between an employer and employee."); *Schutte v. United Dairy Farmers, Inc.*, No. C-1-97-850, 1998 U.S. Dist. LEXIS 22449, at *15 (S.D. Ohio March 12, 1998) ("Adopting the covenant of good faith and fair dealing in the employment at-will doctrine would undermine the at-will doctrine because it would allow an employee to challenge any termination where the employer terminated an at-will employee."). Dr. Mares' breach of contract claim was therefore properly dismissed on this basis as well.

### Conclusion

The District Court properly granted summary judgment to MVH and PHP on Dr. Mares' claims. For the reasons outlined above, MVH and PHP asks this Court to affirm the District Court's decision.

Respectfully submitted,

*/s/ Karen T. Dunlevey*
Karen T. Dunlevey
JACKSON LEWIS P.C.
PNC Center, 26th Floor
201 E. 5th Street
Cincinnati, Ohio 45202
Telephone (937) 949-3846
Facsimile (937) 898-0051
E-mail karen.dunlevey@jacksonlewis.com

*Counsel for Defendants-Appellees Miami Valley Hospital and Premier Health Partners*

**Form 6.  Certificate of Compliance With Type-Volume Limit**

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with [the type-volume limit of Fed. R. App. P.
   [**32(a)(7)(B)**_____]] [the word limit of
   Fed. R. App. P. [**Fed. R. App. P. 32(a)(7)(B)(iii)**_____]]
   because, excluding the parts of the document exempted by Fed. R. App. P. 32(f)
   [and [**insert applicable Rule citation, if any**_____]]:

   ☑ this document contains **3,007**_____words, or

   ☐ this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
   and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this document has been prepared in a proportionally spaced typeface using
   **Times New Roman**_____ in

   **14 point font**_____, or

   ☐ this document has been prepared in a monospaced typeface using

   _____ with

   _____.

   /s/**Karen T. Dunlevey**_____

   Attorney for **Defendants-Appellees**_____

   Dated: **September 20, 2023**_____

## Certificate of Service

I certify that, on September 20, 2023, a true and accurate copy of the foregoing was filed with the Court's CM/ECF system which will serve notice on all counsel of record.

/s/ Karen T. Dunlevey
Karen T. Dunlevey

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry | Description | PageID # Range |
|---|---|---|
| RE 1 | Complaint | 1-10 |
| RE 1-1 | Exhibit A to Complaint: Resident Agreement | 11-15 |
| RE 1-3 | Exhibit C to Complaint: Item 504 | 18-21 |
| RE 25-1 | Affidavit of Teresa Zryd, M.D. with Exhibits A-D | 172-191 |
| RE 25-1 | Exhibit B to Affidavit of Teresa Zryd, M.D. | 183-185 |
| RE 25-1 | Exhibit D to Affidavit of Teresa Zryd, M.D. | 190-191 |
| RE 39 | Amended Complaint | 576-585 |
| RE 52 | Deposition Transcript of Plaintiff Mares | 863-1166 |
| RE 52-64 | Exhibit YY to Deposition of Plaintiff Mares | 1496-1658 |
| RE 61 | Deposition of Teresa Zryd, M.D. | 2476-2518 |
| RE 69 | Order Granting Defendants' Motion for Summary Judgment | 2813-39 |
| RE 71 | Notice of Appeal | 2841-2842 |

4885-8461-3758, v. 2